### In re MAYFAIR BUILDING CORPORATION.

### ROSSET et al. v. MAYFAIR BUILDING CORPORATION.

#### No. 6469.

Circuit Court of Appeals, Seventh Circuit.
July 2, 1938.

Edgar J. Schoen and Aaron Taymor, both of Chicago, Ill., for appellant.

Julius Moses, Hamilton Moses, S. Sidney Stein, Walter Bachrach, Robert Bachrach, and Herbert H. Kennedy, all of Chicago, Ill., for appellees.

Before MAJOR and TREANOR, Circuit Judges and LINDLEY, District Judge.

TREANOR, Circuit Judge.

This is an appeal by a Bondholders' Protective Committee from an order of allowance of fees and expenses upon the petition of the Committee. The order was made in the course of proceedings for the reorganization of a property known as the Mayfair Hotel. A plan of reorganization was confirmed and the order in question allowed the Committee for their services and expenses the sum of $8,150, subject to a deduction of $3,000 which represented a sum received by the appellants prior to the reorganization proceedings from the mortgage trustee in charge of the property. It was further provided in the order of allowance that the members of the Bondholders' Protective Committee aid in the prompt distribution of certificates of beneficial interest under the plan of reorganization to the holders of first mortgage bonds or of certificates of deposit of such bonds; and the order further required the members of the Committee not to seek or accept, directly or indirectly, any compensation or reimbursement from the holders of such first mortgage bonds or of such certificates of deposit or interest, on account of or in connection with any services or expenses heretofore rendered or incurred by the Committee or any member thereof.

The Bondholders' Protective Committee came into existence on January 31, 1931, for the purpose of enforcing and collecting the bonds solely of those bondholders who became parties to a deposit agreement of that date. The deposit agreement provided that the Committee should be entitled to compensation for services and expenses and that the Committee should be given a first lien upon the deposited bonds as security for such compensation; and that the Committee should look solely to the security of the deposited bonds for payment.

On April 23, 1935, a petition for reorganization of the debtor corporation under Section 77B, Bankr.Act, 11 U.S.C.A. § 207, was filed by certain creditors. Thereafter the Bondholders' Protective Committee was permitted to intervene and later filed its petition for allowance of fees for services and expenses. The petition requested allowances for services rendered and for expenses incurred as far back as 1932, and apparently covered services and

expenses which were not connected "with the proceeding and plan"; but the petition requested allowances for services and expenses without distinguishing between those connected with the proceedings and plan and those not in connection with the proceedings. The Master to whom the allowance of fees was referred understood the petition to cover all claims of the Committee for all services and expenses before the institution of 77B proceedings, as well as after. In his report the Master stated that he was resolving in favor of the Committee the question whether its services before 77B were compensable; and the fees which he recommended for allowance were recommended as payment in full for all services and expenses. The Master recommended an allowance of $7,500 for the Committee, subject to a deduction of $3,000 on account of previous payment. The District Court modified the recommendation of the Master by increasing the allowance from $7,500 to $8,150.

The substance of the Committee's contentions on appeal may be stated as follows: (1) The District Court should have found and ordered the allowance in full only for services rendered and expenses incurred in connection with the proceedings and plan approved by the court.

(2) The court should have found that appellants were at liberty to enforce their rights under the deposit agreement for such services rendered and expenses incurred as were not compensable in the proceedings below out of the debtor's estate.

(3) That the District Court's requirement that the Committee aid in the prompt distribution of the certificates of beneficial interest under the plan of reorganization to the holders of bonds or certificates of deposit of such bonds was an unlawful interference with their lien rights provided for in their deposit agreement.

(4) It was error for the District Court to order the $3,000 deduction since the $3,000 was received by the Committee for expenses not compensable in the reorganization proceedings and should not be credited against compensable allowances to the Committee.

(5) The allowance of $8,150 in full for the Committee's services and expenses was inadequate.

We shall first consider whether the District Court erroneously found and ordered an allowance for services rendered and expenses incurred prior to and not in connection with the proceedings and plan approved by the court. As a general proposition it would be improper for a District Court to make an allowance in a reorganization proceedings to a Bondholders' Protective Committee for services rendered and expenses incurred which did not contribute to the formation and adoption of a plan of reorganization. But in the instant case the Committee included in its petition for allowance the services and expenses which it now insists were not compensable in the reorganization proceedings. The Master resolved any doubt respecting their compensability in the reorganization proceedings in favor of the Committee and the District Court, with some modification as to amount, approved the Master's recommendation. The Committee's exceptions to the Master's report presented no objection to the allowance of all of the Committee's compensation out of the debtor's fund and in the reorganization proceedings. It was urged in the exceptions that the amount recommended by the Master was grossly inadequate; that the deduction of the $3,000 was "arbitrary, totally unsupported by the record and inequitable," and that the recommendation that the allowance of $7,500 be made to and include all and any services, expenses and obligations performed or incurred by the Committee, both prior and subsequent to the institution of these proceedings, was in derogation of the lien which was authorized by the Committee's deposit agreement; and that such recommendation was arbitrary and inequitable in that it impaired the contractual and lien rights of the Committee. At the hearing before the Master no evidence was introduced for the purpose of determining what services were rendered and what expenses were incurred in connection with the proceedings and the plan approved by the court as distinguished from services and expenses not connected with such proceedings and plan.

It is apparent that the Committee had no objection to losing any claimed rights under the deposit agreement if the court had been willing to allow a sum which the Committee thought would adequately compensate it for all services rendered and expenses incurred both prior to and after the institution of the reorganization proceedings, regardless of the connection of such services and expenses with the reorganization proceedings.

■ No objection was made either by the debtor or by any creditor to the allowance of fees to the Committee as compensation in full for all services and expenses before and after the proceedings; the petition of the Committee requested such action, and the Committee made no effort in the hearing before the Master or by its exceptions to the report to differentiate between expenses and services connected with the reorganization proceedings and those not connected. Whatever grounds for complaint the Committee might have as to the adequacy of the compensation allowed, it cannot complain on appeal that the District Court erred in not finding and ordering that the allowance awarded was in full, only for services rendered and expenses incurred in connection with the proceedings and plan below. We must assume on appeal that the services rendered and expenses incurred were in connection with the proceedings and plan approved.

■ We see no valid objection to the District Court's order that the Committee not seek or accept any compensation or reimbursement from holders of the bonds or certificates of deposit for services or expenses theretofore rendered or incurred by the Committee. As already pointed out, the District Court considered all services and expenses of the Committee both before and after reorganization proceedings, and ordered that the allowance made should be in full for all such services and expenses. There is no suggestion in the Committee's petition that it was relying upon its claim against bondholders for compensation for any of its services or expenses; and the Committee, having urged in its petition, and in its exceptions to the Master's report, all of its services and expenses as the basis of the requested allowance cannot now object to the court's restricting the Compensation to the amount allowed by the court. The allowance to the Committee was intended to cover services and expenses for which the Committee now insists it has a legal claim against the bondholders. And assuming that such allowance was adequate, the Committee should not be permitted to receive additional compensation from the bondholders whose property interest in the assets of the debtor has been reduced by the amount of the allowance.

■ In view of what we have already said, we think that the District Court properly deducted the $3,000 from the allowance of $8,150. For some time prior to the institution of the reorganization proceedings the trustee under the mortgage securing the bonds had operated the property of the debtor. While operating the property the trustee used the sum of $3,000 from the income to compensate the Bondholders' Protective Committee for services and expenses which were considered by the Master and by the District Court in arriving at a proper allowance for the Committee. The Committee by its petition, and the court by its order, treated the allowance for all services and expenses of the Committee as a charge upon the debtor's property and the court's allowance was made upon that basis, and since the court allowed the sum of $8,150 as compensation in full for all services and expenses of the Committee, it was proper to deduct therefrom the sum of $3,000 which had already been advanced to the Committee out of the property of the debtor as part compensation for the Committee's services and expenses. Such action was supported by the testimony of the chief witness for the Committee who testified that the total amount of expenses which had been allocated to the Mayfair issue of bonds was $9,568.57 and that the sum of $6,568.57 is the net expense after deduction of $3,000 paid to the Committee by the trustee.

Appellant relies on the decision of this court in Davis v. Tower Building Corporation [1] as being contrary to the foregoing conclusion. But that case is distinguishable on its facts. The deduction there involved, which was held by this court to be improper, was allowed by the District Court to offset a payment by the debtor to a bondholders' committee for services connected with a so-called plan for reinstatement. The services were provided for by a contract between the debtor and the committee and were rendered and paid for several years before Section 77B was enacted. The committee did not make any claim for such services in the reorganization proceeding, and the district judge did not take them into consideration in making the allowance of fees to the committee for services connected with the reorganization proceedings.

---

[1] 7 Cir., 88 F.2d 347.

■ In connection with the contention of the Committee that the allowance of $8,150 was inadequate it is urged that the sum allowed did not equal the unpaid expenses of the Committee plus the amount which the Committee was obligated to pay its depositary. We find difficulty in appraising the merits of the Committee's contention because of the absence of evidence which would definitely fix the value of the Committee's services to the Mayfair reorganization. The Bondholders' Committee is engaged in the business of acting as a Bondholders' Protective Committee and had in its charge more than 120 issues of bonds totalling some $20,000,000. The Mayfair bonds which it represented constituted 62.9% of Mayfair's outstanding bonds and totalled $466,400—less than ⅟₄₀th of the total amount of bonds in respect to which the Committee was rendering services. The Committee maintained offices which rendered services to all bondholders which it represented, a major part of its expenses consisting of general office maintenance. The Master stated in his report that the larger part of the work of the Committee was done by the chairman "as its most active member." This member testified that an auditor pro rated all of the Committee's expenses "among all the issues in the proportion of the bonds we have on deposit as against the total deposit of bonds." He also testified that he had kept a record of the exact time "spent on Mayfair for a year or two," but that he finally stopped keeping any track of the time that he spent on the Mayfair as well as all issues because, as he said, "I got tired of the entire procedure." The only expense items which were shown by the evidence at the hearing before the Master to be directly chargeable to the handling of the Mayfair issue of bonds were $162.56 for revenue stamps, $48.15 for letters to bondholders, and $45.89 for postage and sundry expenses. The Committee's witness stated by way of conclusion that the proportion of total expenses charged to the Mayfair issue was approximately ⅟₄₀th of the Committee's expenses. The total amount charged against the Mayfair, including the $3,000 which had been paid by the mortgage trustee, was $9,568.57. If the witness's statement was accurate, the conclusion is that the Committee's total expense charges with respect to all of the 120 issues from June, 1932, to January, 1937, aggregated the sum of $382,742.80. But no evidence was offered to show the total actual expenses of the Committee in respect to all the issues. And the Master stated in his report that "the expenses, of which the foregoing amount is an allocation, were not very definitely proved."

It further appears that the attorney for the Committee was allowed a fee of $4,700 for his services as attorney. This was apart from the allowance to the Committee. The Attorney for the Committee was not entitled to compensation out of the debtor's estate for services to the Committee except on the assumption that such services were in aid of the formation and adoption of the plan of reorganization. We are not in a position to determine to what extent the services for which the Committee's attorney received compensation overlapped and duplicated the services rendered by the Committee. It is peculiarly within the knowledge of a District Court whether there is a duplication of claims when an allowance is being sought both for services of a Committee and for services of the Committee's attorney.

The Committee asked for an allowance of $6,801.49 to cover the Committee's obligation to their depositary. The Master pointed out in his report that 785 bonds were deposited with the depositary for which 381 certificates were issued; that the amount requested represented a charge of $17 a certificate, or $13.53 per $1,000 bond. The Master indicates that a charge of $2 a certificate would be reasonable. If his judgment is sound the reasonable allowance for the services of the depositary would amount to $762.

For this court to hold that the $8,150 was not adequate compensation for both services and expenses of the Committee it would be necessary for us to have before us such conclusive evidence as to the value of each that we could say that the District Court reasonably could not have found that the $8,150 was adequate.

■ We are of the opinion that the record does not justify our holding that the District Court abused its discretion in fixing the amount of allowance of the Committee of $8,150 subject to a reduction in an amount equal to the previous payment of $3,000 made to the Committee by the mortgage trustee. And since the Committee submitted a claim for all of its services rendered and expenses incurred, both before and after the institution of the reorganization proceedings, including their services and expenses in connection with

the handling of the Mayfair bonds, and since the Committee, the Master, and the District Court treated the claim as one for expenses and services connected with the reorganization proceedings and the plan, and since there was no finding that any particular items of expense or service were not compensable in the reorganization proceedings, we cannot say that the allowance did not cover all services and expenses; nor can we say that the services and expenses were not compensable as a part of the cost of the reorganization proceedings. Consequently, we cannot hold that it was error for the District Court to require the Committee not to seek or accept compensation or reimbursement from the bondholders "for services heretofore rendered or incurred" and to require the Committee to aid in the prompt distribution of the certificates of beneficial interest under the plan of reorganization to the holders of bonds or of certificates of deposit of bonds.

Assuming that the Committee's allowance was adequate for all its services and expenses, the order of the District Court did not deprive it of any rights or interests without compensation.

The order of the District Court is

Affirmed.